**Moray L. EPHRAIM, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 92–1177.**

United States Court of Veterans Appeals.

Sept. 16, 1993.

As Amended Nov. 24, 1993.

Sean A. Kendall, Washington, DC, was on the pleadings, for appellant.

James A. Endicott, Jr., Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Mary Ann Flynn, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

HOLDAWAY, Judge, filed the opinion of the Court, in which NEBEKER, Chief Judge, joined.

STEINBERG, Judge, filed a dissenting opinion.

HOLDAWAY, Judge:

In a February 24, 1993, order, the Court stayed appellant's claim pending a decision in *Hamilton v. Brown*, 4 Vet.App. 528 (1993) (en banc). The question presented is whether a valid Notice of Disagreement (NOD), filed on or after November 18, 1988, is present in this case.

## BACKGROUND

In June 1986, the Veterans' Administration (now the Department of Veterans Affairs) (VA) Regional Office (RO) reduced appellant's evaluation for service-connected depressive neurosis from 50% to 10%. Consequently, the RO also discontinued entitlement to a total evaluation due to individual unemployability. In May 1987, appellant filed an NOD. In October 1987, he filed a VA Form 1–9 appealing this decision to the Board of Veterans' Appeals (BVA or Board). In a May 1988 rating decision, the RO continued the 10% disability rating for service-connected depressive neurosis.

On July 24, 1989, the Board remanded appellant's claim. The RO was directed to consider appellant's claim under revised diagnostic criteria for neuropsychiatric disorders, and to return the claim to the Board if the benefit sought continued to be denied. In an August 1989 rating decision, the RO determined that the evaluation of appellant's depressive neurosis under the revised criteria did not result in a change from its previous decision. Subsequently, appellant remained ineligible for total disability based on individual unemployability.

In September 1989, appellant disagreed with this rating and requested reinstatement of his previous rating. In defense of the previous rating, he claimed to have, inter alia, a "nervous disorder with consideration for P.T.S.D. [post-traumatic stress disorder]." On March 8, 1990, the RO issued a rating decision on appellant's claim. After a review of the record, the RO determined that "service connection is established for post traumatic stress disorder with depressive neurosis evaluated 10%." In May 1990, appellant filed a statement expressing disagreement with the March 1990 rating decision. In an October 1990

personal hearing, he testified at length (as he had previously) regarding the severity of his mental condition and linked it in part to combat experiences in Vietnam. This is the context within which PTSD was raised as an issue in this case. The BVA denied appellant's claim for an increased evaluation for service-connected depressive neurosis with PTSD, and appellant's claim for entitlement to a total disability rating based upon individual unemployability.

## ANALYSIS

■ The narrow question now before the Court is whether by raising the issue of PTSD in connection with the previously reduced rating for depressive neurosis, the appellant raised a separate and distinct disability claim that had not been previously considered. We hold he did not. It is clear from both the wording of his disagreement as well as the testimony at two hearings that the appellant's "claim" of PTSD was inextricably intertwined with the rated depressive neurosis condition. That too was the understanding of the RO, as evidenced by the rating wherein the two conditions were coupled. In short, appellant injected, and intended to inject, the PTSD issue simply as another facet, of the general question concerning the degree of disability he was suffering from his mental disability. He raised it as a defense to the reduction of his mental disability rating. The May 1990 expression of disagreement was, therefore, merely a disagreement with a subsequent readjudication of a remanded claim. *See Calvert v. Brown*, 5 Vet.App. 461 (1993) (per curiam order). In accordance with *Hamilton, supra*, we are constrained to hold that the only NOD filed was the NOD filed in May 1987 protesting the reduction of benefits stemming from the appellant's mental disability. The majority takes note of our colleague's dissent. His analysis, try as it might to show otherwise, establishes conclusively that the PTSD *issue* was part and parcel of the readjudication of the remanded claim.

In *Hamilton,* the Court held that "[t]here can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim.... [W]here the BVA remands to an RO for further development and readjudication ... an expression of disagreement with a subsequent RO readjudication on remand cannot be an NOD." *Hamilton,* 4 Vet.App. at 538. The only exception is where, on remand of one claim, a separate and distinct claim is raised that was not previously adjudicated. There can be an NOD as to the *new* claim, and if subsequent to November 18, 1988, it will import jurisdiction to the Court as to that claim only. This NOD could not, of course, "revive" jurisdiction as to the initial, unrelated claim if the NOD as to that claim preceded the November 18, 1988, date. (This is the situation in *Contreras v. Brown,* 4 Vet.App. 528, 541–42 (1993) (consolidated with *Hamilton* )). Appellant concedes that, in accordance with the *Hamilton* analysis, there is no jurisdiction-creating NOD as to his claim for a total disability. However, he contends that his claim of service connection for PTSD was a new claim, and that his May 1990 expression of disagreement is, therefore, a valid NOD as to that claim. The expression of disagreement that raised the issue of PTSD was a disagreement with a rating that was rendered pursuant to a remand for readjudication where the RO had previously reduced benefits for a disability stemming from a service-connected "depressive neurosis." The NOD filed as to that reduction was filed in May 1987 and is clearly, per *Hamilton,* not an NOD that would give this Court jurisdiction.

### CONCLUSION

The appeal is DISMISSED for lack of jurisdiction.

STEINBERG, Judge, dissenting:

I respectfully dissent from the Court's opinion dismissing for lack of jurisdiction the veteran's claim for service connection for post-traumatic stress disorder (PTSD).

The Court has jurisdiction over any claim as to which a Notice of Disagreement (NOD) was filed on or after November 18, 1988. Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C.A. § 7251 note (West 1991)). In *Hamilton v. Brown,* 4 Vet.App. 528, 538 (1993) (en banc), the Court held that "[t]here can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a *final* RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant." In the instant case, the majority holds that a pre-VJRA NOD filed by the veteran (in May 1987) to initiate appeal of a June 1986 regional office (RO) decision *reducing* his service-connected disability rating for "depressive neurosis" necessarily comprehended the question of the veteran's entitlement to service connection for PTSD, so that, under *Hamilton, supra,* the veteran could not have filed a valid NOD on or after November 18, 1988, with respect to the PTSD claim. In other words, the majority concludes that, on the facts of this case, the issue of whether the RO erred in reducing the veteran's rating for service-connected depressive neurosis and the issue of the veteran's entitlement to service connection for PTSD constitute a single "claim" under *Hamilton.* I disagree.

The veteran's May 1987 NOD was not filed in response to an RO decision on a specific claim for benefits filed by the veteran. Rather, it was filed in response to a decision, issued on the RO's own initiative, reducing the rating for the veteran's service-connected depressive neurosis. Prelim.R. at 16–17. I find absolutely no basis for concluding that the June 1986 RO decision adjudicated a claim for service connection for PTSD or adjudicated a matter which by any stretch of the imagination included a claim for service connection for PTSD. The majority reaches its conclusion without explaining how an adjudication which, by its terms, involved no more than a rating reduction for an already service-connected condition could also have addressed a claim for service connection for

an additional disability that had *not then been raised* to the RO.

The only issues before the RO in its June 1986 decision were the propriety of reducing the rating for the veteran's service-connected "depressive neurosis" and of withdrawing the veteran's total disability rating based on the veteran's unemployability due to his then existing service-connected disabilities (TDIU rating). Indeed, that June 1986 RO decision expressly indicated that it was not an "original disability rating". Prelim.R. at 16. Neither that decision nor the veteran's May 1987 NOD raised, expressly or implicitly, the issue of service connection for any other condition. Subsequently, an August 1987 Statement of the Case (SOC) (Prelim.R. at 24–29), RO decisions in May 1988 (R. at 56) and September 1988 (Prelim.R. at 66), a July 1989 BVA remand decision (Prelim.R. at 73–75), an August 1989 post-remand RO decision (Prelim.R. at 76), and an August 1989 Supplemental SOC (Prelim.R. at 78–80) all listed the issues on appeal as being only the issues of the veteran's entitlement to *restoration* of his prior disability rating for his service-connected depressive neurosis and of his entitlement to *restoration* of his TDIU rating.[1] The issue of service connection for PTSD was raised for the first time in a September 27, 1989, statement submitted to the RO by the veteran, stating: "In addition to reconsidering my service[-]connected disabilities please note my [medical treatment] summary of 5/17/88 which supports my request in considering PTSD". Prelim.R. at 82.

Because the only issues adjudicated in the June 1986 RO decision pertained to the level of disability resulting from conditions which were already service connected, that decision cannot be said to have addressed any claim for entitlement to service connection for PTSD. Therefore, the veteran's May 1987 NOD as to that decision could not have pertained to a claim for service connection for PTSD. As we said in *Ham-*

*ilton*, 4 Vet.App. at 542, when there is "no indication in the record that [a particular claim was] before the RO at the time of its initial determination ..., the veteran's [pre-VJRA] NOD as to that determination did not, because it could not, comprehend [that claim]". Here, the issue of service connection for PTSD was not raised to the RO, expressly or implicitly, until September 1989, more than three years after that RO decision and more than two years after the June 1987 NOD. *Cf. Zevalkink v. Brown,* No. 91–1683, slip op. at 6 (U.S.Vet.App. Aug. 17, 1993) ("It would be anomalous to hold that a May 1987 NOD could apply to claims which could not have been filed prior to December 7, 1988.").

The majority bases its conclusion that the June 1986 RO decision addressed a claim for service connection of PTSD on the notion that the issue of PTSD was "intertwined" with the issue of the veteran's "level of disability due to anxiety neurosis" and was "raised ... as a defense to the reduction of his mental disability rating". *Ante* at 550. However, neither of those factors, which are based upon analysis of events transpiring subsequent to the June 1986 RO decision and the May 1987 NOD, indicates that that RO decision and NOD were, or can reasonably be construed to have been, addressed to the issue of entitlement to service connection for PTSD.

It is immaterial that the claim for PTSD service connection and the appeal from the reduction in the depressive-neurosis rating may be, as the majority concludes, "intertwined". The fact that two claims, raised and adjudicated at separate times and as to which separate NODs were filed, may be found to be intertwined and were ultimately combined by the RO into a single service-connected and rated condition does not serve to transform the NOD as to the first claim into an NOD as to the second claim initially raised long after the filing of that NOD. Just as the Court held in *Tucker v.*

---

**1.** Although these VA actions generally describe the issue as "increased rating" rather than "restoration", that characterization has been subsequently declared invalid by a long line of precedent opinions of this Court in cases involving appeals of reduced ratings. *See, e.g., Peyton v. Derwinski,* 1 Vet.App. 282, 286 (1991) ("This is a rating reduction case, not a rating increase case."); *Dofflemyer v. Derwinski,* 2 Vet.App. 277, 279–80 (1992).

*Derwinski*, 2 Vet.App. 201, 202 (1992), that the BVA's consolidation of three separate appeals into one decision could not give jurisdictional life to the two of those appeals as to which pre-VJRA NODs had been filed, the fact in the instant case that the two separate claims may be intertwined and were consolidated by the RO into a single adjudication should not be allowed to operate so as to deprive this Court of jurisdiction over a clearly separate and subsequently raised claim as to which a post-VJRA NOD was filed.

Similarly, the majority's characterization of the veteran's claim for service connection for PTSD as a defense to the reduction in his rating, although perhaps accurate in the sense that an award of benefits on his PTSD claim might have served to offset the rating reduction as to his depressive neurosis, is irrelevant to the determination as to whether the PTSD claim had been raised to or adjudicated by the RO in the June 1986 decision which was the subject of the veteran's May 1987 NOD. Simply put, if no claim for service connection for PTSD was expressly or implicitly raised to or adjudicated by the RO in June 1986, there is no basis for concluding that the May 1987 NOD comprehended such a claim. *See Hamilton*, 4 Vet.App. at 542; *Zevalkink, supra.*

The Court's recent panel order in *Calvert v. Brown*, 5 Vet.App. 461, (1993) (per curiam order), is not contrary. There a claimant had filed a pre-VJRA NOD (in January 1988) in response to an April 1987 RO decision denying service connection for a "nervous condition". The Court held that a July 1990 RO decision denying service connection for PTSD and bipolar disorder was an adjudication of a claim which had been the subject of the pre-VJRA NOD and that, therefore, the claimant could not have filed another valid NOD, in response to the July 1990 RO decision, as to that claim. In that case, although at the time of the April 1987 RO decision the claimant had not expressly raised a claim for service connection specifically for PTSD or bipolar disorder, the Court stressed that the "general" claim before the RO in April 1987 for ser-vice connection for a "nervous condition" comprehended the "specific" issues of "service connection for such psychiatric disorders as bipolar disorder, depressive reaction, and PTSD." *Id.* at 463. The holding in *Calvert*—that a *specific* claim for service connection for PTSD or bipolar disorder is subsumed for NOD purposes within a previously adjudicated claim for service connection for a condition described *generally* as a "nervous condition"—follows from this Court's precedents and VA's own regulations, as discussed below.

In adjudicating a veteran's claim for benefits, an RO and the BVA are required to "administer the law under a broad interpretation" (38 C.F.R. § 3.102 (1992)), and "to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government" (38 C.F.R. § 3.103(a) (1992)). Furthermore, with regard to claims for service connection, VA regulations provide:

> Each disabling condition shown by a veteran's service records or for which [the veteran] seeks a service connection must be considered on the basis of the places, types and circumstances of [the veteran's] service as shown by service records, the official history of each organization in which [the veteran] served, [the veteran's] medical records and all pertinent medical and lay evidence.

38 C.F.R. § 3.303(a). This Court has held that the RO and BVA are required to "review all issues which are reasonably raised from a liberal reading" of "all documents or oral testimony" submitted prior to the decision rendered. *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991); *Myers v. Derwinski*, 1 Vet.App. 127, 129 (1990); *see Douglas v. Derwinski*, 2 Vet.App. 435, 439 (1992) (en banc); *Douglas v. Derwinski*, 2 Vet.App. 103, 107 (1992). Hence, when a claimant files a claim for service connection for a particular claimed disability, the RO and BVA are, at a minimum, required to consider the veteran's entitlement, on any basis consistent with the claim, to any benefit which could flow from a determination of service connection and to which entitlement is reasonably raised on the record.

**554**

VA regulations recognize that "[t]he field of mental disorders represents the greatest possible variety of etiology, chronicity, and disabling effects, and requires differential consideration in all these respects". 38 C.F.R. § 4.125 (1992). Therefore, it is clear that a general claim for service connection for a "nervous disorder" may include issues of entitlement to any number of specific nervous or mental disorders, and that, under the above-quoted regulations and precedents, the RO and BVA, in adjudicating a claim for service connection for a "nervous disorder", would be required to consider the claimant's entitlement to service connection for any mental disability which is reasonably raised under applicable law and regulation by the claim or the evidence of record. It follows, therefore, that where, as in *Calvert*, the RO has previously adjudicated a claim for service connection for a "nervous disorder" and the claimant has filed an NOD as to that adjudication, a subsequent RO decision adjudicating entitlement to service connection for a specific disorder such as PTSD is not an adjudication of a new claim or issue as to which a new valid NOD may be filed. Rather, in *Calvert*, the **more specific** issue of entitlement to service connection for PTSD was subsumed in the **more general** issue of entitlement to service connection for a nervous disorder, which had been the subject of a prior NOD.

In contrast, the June 1986 RO adjudication in the instant case was not an adjudication of a general claim for service connection, which could have comprehended the more specific issue of service connection for PTSD. Rather, that June 1986 RO decision pertained to a specific disorder, depressive neurosis, **and** pertained only to the issue of the level of disability due to that disorder rather than to the issue of entitlement to service connection.

Therefore, as stated above, there is no basis for concluding that the 1986 RO adjudication and the May 1987 NOD in response to that adjudication pertained to the issue of entitlement to service connection for PTSD. Accordingly, I believe that the March 8, 1990, RO decision, which awarded

service connection for "PTSD with depressive neurosis" and assigned a 10% disability rating for that condition (Prelim.R. at 92), was the first RO adjudication of the claim for service connection for PTSD, and that the veteran thereafter filed a valid NOD as to that decision, and that that NOD confers upon this Court jurisdiction over that claim under VJRA § 402.