**Walter F. WEST, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–420.

United States Court of Veterans Appeals.

Jan. 23, 1995.

Walter F. West, pro se.

James A. Endicott, Jr., Gen. Counsel; David T. Landers, Acting Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and William S. Mailander, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, MANKIN, HOLDAWAY, IVERS, and STEINBERG, Judges.

HOLDAWAY, Judge, filed the opinion of the Court. STEINBERG, Judge, filed a dissenting opinion in which KRAMER, Judge, joined.

HOLDAWAY, Judge:

The appellant, Walter F. West, appeals the March 3, 1992, Board of Veterans' Appeals (BVA or Board) decision which assigned an effective date of March 5, 1957, for service connection of the appellant's defective vision of the left eye and denied his claim for entitlement to an evaluation in excess of 10% for defective vision. The Secretary filed a motion for summary affirmance. To ensure consistency of this Court's precedent, the Court has determined in accordance with our Internal Operating Procedures that an en banc opinion is appropriate. For the reasons set forth below, the Court dismisses the appeal for lack of jurisdiction.

## I. BACKGROUND

The appellant served on active duty in the United States Army from August 29, 1944, to June 26, 1946. At his induction the appellant had left eye strabismus and left eye vision of 20/200, both corrected and uncorrected. During service the appellant received an injury to the left eye simultaneous with suffering a concussion. At his discharge examination, the appellant's left eye vision had decreased. Left eye abnormalities were diagnosed as compound myopic astigmatism and a history of amblyopia following concussion, although no abnormalities were observed in the eye as a result of the concussion.

The appellant filed a claim for compensation and pension (C & P) with VA in July 1946. In his claim, the appellant indicated that he had no vision in his left eye except for the ability to distinguish between light and dark. In a rating decision dated August 28, 1946, a VA regional office (RO) rejected the appellant's claim for service connection for an eye disability, finding that his compound myopia and astigmatism were constitutional or development abnormalities which were not compensable. This decision was not appealed.

The appellant submitted additional evidence in 1956 and 1957 describing the injury to his eye during service, and medical records of his current eye disability. VA did not take any action in response to this evidence. The appellant filed another claim for C & P on August 27, 1961. Again, VA did not act. When the appellant filed another C & P claim in 1985, VA did grant a non-service-connected pension, but took no action regarding the claim for compensation.

On February 23, 1987, the appellant filed yet another claim with VA requesting disability compensation for defective vision of the left eye. In March 1987, the RO denied the appellant's left eye disability claim. In January 1988, the appellant filed a Notice of Disagreement (NOD). He stated that he should have been receiving disability compensation since his discharge in 1946. In the letter noting disagreement, the appellant also referred to the possible "incompetence" of the eye examination he received at the time of his 1946 claim. A rating decision dated February 1, 1988, confirmed and continued the denial of service connection for the appellant's left eye disability, finding that there was no new factual basis to warrant a change in the prior decisions. In the Statement of the Case (SOC) prepared February 8, 1988, the RO listed the pertinent law and regulations, including 38 C.F.R. § 3.104(a) (1987).

A BVA decision dated September 13, 1988, remanded the appellant's 1987 claim for service connection for a left eye disorder so that further eye examinations could be conducted. For various reasons, these examinations were never performed. In rating decisions dated March 23, 1989, and December 18, 1989, the RO continued the denial of service connection for a left eye disorder.

A June 27, 1990, BVA decision concluded that the evidence submitted since the August 1946 rating action established a new factual basis showing that the appellant had defective vision in his left eye that was aggravated by active wartime service. Accordingly, the BVA granted the appellant entitlement to service connection for defective vision in his left eye and returned the claim to the RO for assignment of a disability rating. The BVA also determined that the RO decision of August 1946 which denied the appellant's claim for service connection for myopia and astigmatism was final and not clearly and unmistakably erroneous based on the evidence on file at that time. In a July 18, 1990, rating decision the RO found that the appellant's left eye condition was 20% disabling at the time of induction and that it was currently 30% disabling. The RO assigned a 10% rating on the basis of aggravation effective February 23, 1987, the date on which the appellant had filed his claim.

On September 7, 1990, the appellant filed an NOD with the July 1990 RO decision, expressing written disagreement with both the effective date and the assigned 10% rating. In a March 14, 1991, letter to the RO, the appellant again claimed entitlement to an earlier effective date, this time specifically rather than inferentially claiming that there had been "clear and unmistakable error" (CUE) in the August 1946 rating decision that warranted a revision of that decision under 38 C.F.R. § 3.104(a) (1994). *See Mata*

*v. Principi,* 3 Vet.App. 558 (1992). On May 2, 1991, the RO denied entitlement to an earlier effective date as well as to an increased rating. *Cf. Smith v. Brown,* 35 F.3d 1516, 1522, 1527 (Fed.Cir.1994) (an RO does not have the authority to collaterally review BVA final decisions).

In the March 3, 1992, BVA decision (the decision on appeal), the BVA, finding that the appellant had submitted an informal claim through medical records submitted in March 1957, awarded an earlier effective date of March 5, 1957, for defective vision, but denied an effective date retroactive to 1946 and denied a rating in excess of 10%. The Board further determined without elaboration or explanation that the issue of whether the 1946 rating action was a result of CUE was not properly before the Board in 1990 and that, therefore, the findings of fact and conclusions of law pertaining thereto were merely dicta. The Board then reconsidered and once again denied the CUE claim.

## II.  ANALYSIS

■ In order for the Court to have jurisdiction over a case, the appellant must have filed a valid NOD as to that case on or after November 18, 1988. *See* Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); *Hamilton v. Brown,* 4 Vet.App. 528, 531 (1993), *aff'd,* 39 F.3d 1574 (Fed.Cir.1994). The question presented here is whether under *Hamilton* the September 1990 document is a valid NOD for purposes of VJRA § 402 or whether the original January 1988 NOD is the only valid NOD as to those matters. We hold that the NOD filed in January 1988 initiated the appeal in this case and that all subsequent adjudications of this disability claim, including the rating and the effective date (CUE) elements, were part of the case to which the January 1988 NOD applied.

Recently the Federal Circuit in *Hamilton v. Brown,* 39 F.3d 1574 (Fed.Cir.1994) considered whether there can be more than one NOD relating to the same claim. The Federal Circuit essentially affirmed this Court's opinion holding that there can only be one NOD relating to the same case. In that case, appellant Hamilton filed an NOD in June 1986 when the RO denied his claim for service connection for post-traumatic stress disorder (PTSD), the BVA remanded to the RO in 1987 for further development, the RO reaffirmed its denial, Hamilton disagreed, the BVA remanded again in December 1988, the RO reaffirmed its denial, Hamilton filed a VA Form 1–9, Appeal to the BVA (Form 1–9) in 1989, and the BVA issued its decision in 1990 finding that the appellant had not shown PTSD. *Id.* at 1577–79. This Court dismissed for lack of jurisdiction. *Id.* at 1579–80. After a thorough review of the appellate process, legislative history of section 402 of the VJRA, and applicable VA regulations, the Federal Circuit concluded that the jurisdiction-creating NOD referred to in section 402 is "one which *initiates appellate review*" of a claim. *Id.* at 1582, 1586. In appellant Hamilton's case, the Federal Circuit found that the June 1986 NOD initiated appellate review, not the 1989 Form 1–9, and it affirmed this Court's dismissal for lack of jurisdiction. *Id.* at 1586.

We note that the statute uses the word "case" rather than "claim." However, because the only "cases" over which this Court has jurisdiction are administrative claims appealed to the BVA, the words "case" and "claim" may be used interchangeably, and have been used interchangeably by both this Court and the Federal Circuit. Significantly, Congress did not use, as it could have, the word "issue" in defining a jurisdiction-creating NOD. Thus, any interpretation, as for example the dissent, that would split a single claim, like an amoeba, into separate and distinct claims as to each element for jurisdictional purposes, would run afoul of the clear statutory language. This does not mean that NODs which are filed in response to adjudications of subissues are without legal effect. Obviously, they do trigger a further appeal of the case to the BVA. It does mean, however, that the NOD that initiated the original appeal of the case is the one that does, or does not, create jurisdiction in this Court. This interpretation also accords with common sense since it precludes an interpretation which would give this Court jurisdiction over only part of a case.

In the ordinary case, such as the one here, a veteran files a claim for compensable disability benefits under 38 U.S.C. §§ 1110 or 1131. A disability case or claim necessarily includes the elements of (1) the veteran's status, (2) existence of a disability, (3) service connection of that disability, (4) degree of disability, and, when in question, (5) effective date. *See Sarmiento v. Brown,* 7 Vet.App. 80, 87 (1994) (Kramer, J., concurring) ("[S]tatus was merely one element of a claim to be established in the same way as any other element involved in a claim, such as service connection or degree of disability."); *cf. Bernard v. Brown,* 4 Vet.App. 384, 392 (1993) (Claimants "submit claims for VA benefits, which, in cases of previously and finally denied claims, implicate both the question of whether there is new and material evidence to reopen the claim and the question of whether, upon such reopening, the claimant is entitled to the requested benefits.... Although the two questions are distinct, they are components of a single claim for benefits.").

A successful claimant has not had his case fully adjudicated until there is a decision as to all essential elements, i.e., status, disability, service connection, rating, and when in question, effective date. When, as here, the RO denies the claim at the threshold because of lack of service connection, it had neither the obligation nor opportunity to assign a rating to the disability or, when in question, assign an effective date. Therefore, when, as in this case, there is a reversal on the question of service connection on appeal by the BVA, the case is, necessarily, returned for adjudication of the other essential elements. However, when the case is returned to the RO, it is the same case upon which the RO originally acted. The NOD as to that original adjudication initiated the appeal that ultimately required further adjudication. The fact remains that these further adjudications of the case are inextricably part of the case originally filed and are extensions of the appeal that was filed. *See Ephraim v. Brown,* 5 Vet.App. 549, 550 (1993) (holding that veteran's subsequent claim of PTSD was inextricably intertwined with his rated claim for depressive neurosis and could not support

a separate NOD that would confer jurisdiction).

For purposes of determining the jurisdiction-creating NOD date, this case fits within the perimeter of *Hamilton,* 4 Vet.App. at 538:

> There can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a *final* RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant.... [W]here the BVA remands to an RO for further development and readjudication a claim previously decided by the RO and properly appealed to the BVA ..., an expression of disagreement with a subsequent RO readjudication on remand cannot be an NOD.

The appellant filed an NOD in January 1988, disagreeing with the RO's denial of his claim for a left eye disability. He also, pointing to the circumstances of his injury and an "incompetent" eye examination, asserted in the NOD that he should have been receiving compensation since his discharge, thus calling into question the correctness of the 1946 denial of his claim. In 1990 the BVA found that the appellant had shown that his left eye disability was aggravated by service and returned the case to the RO to assign a disability rating. The Board, responding to the assertion of an earlier effective date, also found no CUE as to the 1946 RO decision. CUE, of course, was the only vehicle by which a 1946 date could be assigned.

The BVA's action in 1990 was not a final action with respect to the appellant's appeal initiated by the January 1988 NOD; it was a final action only as to one element. The July 1990 RO decision which adjudicated the other elements was part and parcel of the case which originated when the appellant filed his request for disability benefits in February 1987. The NOD filed in 1990 merely sought a full and complete adjudication of that case. Appellate review of the appellant's claim for left eye disability was clearly initiated in January 1988 when he filed an NOD. Because the NOD was filed prior to November 1988, this Court does not have jurisdiction to review the March 3, 1992, BVA decision.

### III.  CONCLUSION

The appeal is DISMISSED.

STEINBERG, Judge, with whom KRAMER, Judge, joined, dissenting:

We cannot join in the Court's opinion because we believe its reasoning and result do not square with the *Hamilton* opinions of the Federal Circuit and of this Court.[1] Moreover, the majority's opinion is at odds with the statutory and regulatory structure governing adjudications in the Department of Veterans Affairs (VA).

### I.  Discussion

#### A.  Basic Jurisdiction

In order for the Court to have jurisdiction over an appeal from a final Board of Veterans' Appeals (BVA or Board) decision, the appellant must have filed a valid Notice of Disagreement (NOD) on or after November 18, 1988, as to the VA regional office (RO) decision which was thereafter appealed to the Board. *See* Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]; *Hamilton v. Brown*, 4 Vet.App. 528, 531 (1993) (en banc). The question presented here is whether, under the Federal Circuit's and this Court's *Hamilton* opinions, the veteran's September 1990 expression of disagreement with the 10% rating and effective date awarded in the July 1990 regional office (RO) decision is a valid NOD for purposes of conferring jurisdiction on this Court under VJRA § 402 as to the rating and effective-date issues, or whether the January 1988 NOD as to the RO's March 1987 denial of service connection continues to be the only valid NOD as to those issues. For the reasons that follow, we conclude that the earlier, pre-November 18, 1988, NOD was not the NOD as to the rating and effective-date issues, which were never addressed by the RO in its March 1987 decision. Consequently, the Court has jurisdiction over this appeal.

1.  *Hamilton v. Brown*, 4 Vet.App. 528 (1993) (en banc), *aff'd*, 39 F.3d 1574 (Fed.Cir.1994) (consol-idated with *Hermann v. Brown*, 39 F.3d 1574).

#### B.  The Secretary's Position

The majority neglects to point out that the parties are in agreement that the Court *does* have jurisdiction over these issues. The Secretary submits the following analysis to guide the Court in applying *Hamilton:*

> Where there is [an RO] denial of service connection, ... there is no decision regarding a disability evaluation or an effective date with which a claimant may disagree. *Thus, a timely filed NOD will initiate the appellate process solely with respect to the issue of entitlement to service connection.*

Response (Resp.) at 10 (emphasis added). Consequently, the veteran's September 1990 notice that he disagreed with the [RO's] determinations [on disability evaluation and effective date] was a valid NOD for purposes of initiating the appellate process, pursuant to *Hamilton* and the controlling statutes and regulations. *Thus, the BVA's March 3, 1992, decision, affirming in part and overturning in part the [RO's rating and effective-date] determinations, was itself appealable to this Court because it was a decision on appeal engendered by an NOD filed subsequent to November 18, 1988.*

Resp. at 13 (emphasis added).

> The standard appellate procedures attach with respect to the new [RO] decision. The claimant will be notified of the disability evaluation(s) and effective date(s) assigned, as well as when compensation, if payable, will begin. Such notice will be accompanied by a statement of procedural and appellate rights, which, in pertinent part, outline what must be done to initiate an appeal and the timeframe within which the prescribed action must be taken.... *In order to express disagreement with an assigned evaluation and/or effective date (thereby initiating an appeal), the claimant must submit a written NOD within the one-year filing period after the above notice....* If an NOD is timely filed, a Statement of the Case will be issued and the claimant will have an oppor-

tunity to file a substantive appeal to the BVA....

Therefore, in answer to the Court's inquiry, where the [RO], following a BVA award of service connection, issues a rating decision that assigns a disability evaluation and an effective date, *the claimant must file a timely NOD in order to appeal any aspect of that rating decision to the BVA.*

Resp. at 16–17 (emphasis added).

### C. The Federal Circuit's Hamilton Opinion

In its opinion affirming this Court's en banc opinion, the Federal Circuit concluded as follows in *Hamilton:*

[A] jurisdiction-creating NOD is a document filed on or after November 18, 1988 that initiates appellate review [within VA] of a claim.

*Hamilton v. Brown,* 39 F.3d 1574, 1586 (Fed. Cir.1994).

Section 402 of the VJRA speaks in terms of a notice of disagreement *filed under* 38 U.S.C. § 7105. Section 7105 is entirely devoted to the subject of an administrative appeal to the Board. A notice of disagreement is discussed solely in the context of initiating an appeal to the Board. *No other function of a NOD is mentioned....* Thus, the plain language of the statute supports the conclusion that the NOD referred to in § 402 of the VJRA is one which *initiates appellate review.*

*Id.* at 1582 (second emphasis added).

[T]here can be only one initial determination in connection with a claim....

*Id.* at 1584.

According to § 19.182(c) [now 38 C.F.R. § 19.38 (1994)], a case *which has been remanded* to the unit which made the initial determination [(the RO)] is automatically returned to the Board for further processing if full relief is not awarded by the [RO] *on remand.* As the regulation puts it, "[u]nless the benefits at issue on appeal are awarded upon review by the [RO], the records will be returned to the [Board] for completion of appellate review. It is thus apparent that the Agency *on*

*remand* is acting as an arm of the Board and not as an "agency of original jurisdiction" [(AOJ)].

....

[T]he [RO], in readjudicating a claim *on remand,* is acting as an arm of the Board. We have already discussed how, under [§ 19.38], a claim is automatically returned to the Board for further processing unless full relief is awarded by the [RO].

*Id.* at 1585 (emphasis added) (footnote omitted).

### D. This Court's Hamilton Opinion

The following principles and holdings that were set forth in this Court's *Hamilton* opinion are fully consistent with the Federal Circuit's analysis in *Hamilton* and with the position of the Secretary in the instant case:

The NOD referred to in VJRA § 402 is one "filed under section 4005 [now 38 U.S.C.[ ] § 7105] of title 38, United States Code". The purpose of the NOD, to which VJRA § 402 refers as one "filed under section 4005", is to "initiate" BVA "appellate review".... *Thus, the NOD is to obtaining BVA review what a Notice of Appeal (NOA) under 38 U.S.C.[ ] § 7266(a) ... is to obtaining review in this Court....*

*Hamilton,* 4 Vet.App. at 535–36 (emphasis added).

Congress ... specifically provided in VJRA § 402 that the NOD securing basic eligibility for judicial review here would be one filed "under section [7105]", not a document which would be superfluous for purposes of securing entitlement to administrative appeal to the BVA.

*Id.* at 536.

*Accordingly, we hold that there is no difference between a title 38 section 7105 NOD and one which is an NOD for purposes of VJRA § 402.* A section 7105 NOD is one which carries out the function of initiating the appeal to the BVA.... [O]nly if the claimant would have to file another NOD in order to avoid an RO adjudication's becoming final after a year could there be a subsequent NOD.

*Id.* at 537 (emphasis added) (citations omitted).

> [S]ubsection (c) of section 7105 ... sets forth the second major attribute of an NOD (the first is to "initiate" appeal to the BVA)—that an NOD stops an RO adjudication from becoming "final"....

*Ibid.*

> *[O]nly one NOD may be filed with respect to* each claim. (The Court uses the term "claim" to refer to an application for VA benefits with respect to *a specific "issue"*, as the latter term is used in the proposed, pending VA regulations.... 57 Fed.Reg. 4088, 4134 (1992) (proposing new 38 C.F.R. § 20.3(k) to define "issue" generally as "the ultimate question to be decided in determining whether or not a particular benefit sought on appeal will be granted ..." and stating that "whether service connection should be granted for a particular disability" is an example of an "issue").)

*Id.* at 536 (emphasis added) (citations omitted).

> *[W]here the BVA remands* to an RO for further development and readjudication a claim previously decided by the RO ... an expression of disagreement with a subsequent *RO readjudication on remand* cannot be an NOD.

*Id.* at 538–39 (emphasis added).

### E.  Analysis

1. *Finality of BVA decision:* An underlying precept of this Court's *Hamilton* opinion, in overruling this Court's prior precedent in *Whitt v. Derwinski*, 1 Vet.App. 40 (1990), was that to be an NOD an expression of disagreement by a claimant must serve the function, provided for by 38 U.S.C. § 7105(a), of "securing entitlement to administrative appeal to the BVA", *Hamilton*, 4 Vet.App. at 536, and be directed to "[an] issue or issues" decided by the RO, *id.* at 537; 38 C.F.R.

§ 20.201 (1994).  Hence, we specifically held in *Hamilton* that a BVA "final appellate decision" on an issue exhausts the pre-decision NOD and requires a new one in order to place the case in appellate status on a new issue. *Hamilton*, 4 Vet.App. at 537.  "In other words," stated this Court in *Hamilton*, "only if the claimant would have to file another NOD in order to avoid an RO adjudication's becoming final after a year could there be a subsequent NOD. *See Rowell [v. Principi]*, 4 Vet.App. [9,] 15 [ (1993) ]." *Ibid.*

VA regulations spell out that "all Board decisions are final on the date stamped on [their] face ... [w]ith the exception of ... [a] remand [which] is in the nature of a preliminary order and does not constitute a final decision of the Board." 38 C.F.R. § 20.1100(a), (b) (1994).  In the present case, after obtaining jurisdiction pursuant to the January 1988 NOD and after awarding service connection, the Board in June 1990 did not address the rating and effective-date issues and did not remand them to the RO. Indeed, it is not clear that the Board could have remanded this case for rating purposes. *See* 38 C.F.R. § 19.182(a) (1989) (now 38 C.F.R. § 19.9 (1994)) (authorizing Board to remand to RO to correct a procedural defect or an evidentiary deficiency preventing the Board from rendering a fair decision).  As will be discussed below, the rating and effective-date issues are each issues separate from the service-connection issue and they had not been the subject of a decision by an RO.[2]

Accordingly, under this Court's *Hamilton* opinion, VA regulation § 20.1100, and the foregoing precedents, the Board's June 1990 decision awarding service connection for the defective-vision disability was a final BVA decision and ended the appeal initiated by the January 1988 NOD. *See Hamilton*, 4 Vet.App. at 537.  The July 1990 RO decision assigning a 10% rating and an effective date

---

2. The effect of the June 1990 BVA decision was to require the RO to assign at least a 0% rating to the service-connected vision disability.  Hence, the posture of the claim at the time of the July 1990 RO decision was directly analogous to a claim for an increased rating.  The Court has held that such a claim is an original claim, which is not subject to the rules governing finality and

reopening of prior final disallowances and which generally requires a current rating examination before it can be fairly adjudicated. *See* 38 U.S.C. §§ 5108, 7104(a), (b); *Suttmann v. Brown*, 5 Vet. App. 127, 136 (1993); *Proscelle v. Derwinski*, 2 Vet.App. 629, 631–32 (1992); *see also Hauck v. Brown*, 6 Vet.App. 518 (1994) (per curiam).

for that disability would be before the BVA on appeal only if a specific NOD were duly filed as to that RO decision—as it was in September 1990—thereby "securing entitlement to ... appeal [it] to the BVA". *Id.* at 536. That July 1990 RO decision as to rating and effective date following the BVA's June 1990 award of service connection was a fully separate, severable, and, indeed, severed proceeding from the one begun when the initial claim for service connection was denied by the RO in March 1987 and appealed to the Board by virtue of the January 1988 NOD. In accordance with the reality of the VA adjudication process under law and regulation, an application for disability compensation from an otherwise eligible veteran necessarily involves three separate and distinct issues: First, the issue of whether a disability is service connected (a status which carries with it a rating of at least 0%—a so-called noncompensable rating); second, the issue of whether the disability should be awarded a compensable rating—10% or higher; and, third, the issue of what should be the effective date for the service-connected rating.

That claims for rating increase and earlier effective date are each separate and distinct is evidenced by the great number of cases in which this Court has been called upon to review BVA decisions on rating questions[3] and BVA decisions on effective-date[4] questions. In the instant case, the September 1990 expression of disagreement was necessary as an NOD in order to obtain BVA review of the July 1990 RO determinations as to rating and effective date because the January 1988 NOD had pertained solely to the March 1987 RO denial of service connection. Otherwise, adjudications of issues as to which a claimant has never had an opportunity to express disagreement would be automatically returned to the Board for review—a result

which would be fundamentally at odds with the VA adjudication process.

Regarding this aspect of the case, the majority states, in holding that the 1987 NOD was the NOD for the rating and effective-date issues:

> This does not mean that [NODs] which are filed in response to adjudications of subissues are without legal effect. Obviously they do trigger a further appeal of the case to the BVA. It does mean, however, that the NOD that initiated the original appeal of the case is the one that does, or does not, create jurisdiction in this Court.

*Ante* at 331. This concept of an NOD for purposes of conferring jurisdiction on the BVA, under 38 U.S.C. § 7105, being separate from an NOD for purposes of conferring jurisdiction on this Court, under VJRA § 402, to review a BVA decision, is inconsistent with the Federal Circuit's *Hamilton* holding that the only function of an NOD under section 7105 is "initiating an appeal to the Board", *Hamilton,* 39 F.3d at 1582, and basically overrules, *sub silentio,* the fundamental precept of this Court's *Hamilton* opinion that an NOD is an NOD: "[W]e hold that there is no difference between a title 38 section 7105 NOD and one which is an NOD for purposes of VJRA § 402." *Hamilton,* 4 Vet.App. at 537. Further, as quoted in part I.D., above, our *Hamilton* opinion concluded:

> [T]he NOD is to obtaining BVA review what a Notice of Appeal (NOA) under 38 U.S.C. [ ] § 7266(a) ... is to obtaining review in this Court.... Just as there is no need to file more than one NOA to obtain review here, so there is no need to file more than one NOD to obtain BVA review of the denial of a particular claim.

*Hamilton,* 4 Vet.App. at 535–36. The Federal Circuit indicated its endorsement of this concept by pointing out that the NOD language eventually enacted in VJRA § 402 was

---

**3.** *See, e.g., Ardison v. Brown,* 6 Vet.App. 405, 407 (1994); *Caffrey v. Brown,* 6 Vet.App. 377, 380–82 (1994); *Frazer v. Brown,* 6 Vet.App. 19 (1993); *Waddell v. Brown,* 5 Vet.App. 454, 456–57 (1993); *Shoemaker v. Derwinski,* 3 Vet.App. 248, 252–55 (1992); *Ashmore v. Derwinski,* 1 Vet.App. 580, 581 (1991); *Ferraro v. Derwinski,* 1 Vet.App. 326, 328–31 (1991); *Barnes v. Derwinski,* 1 Vet.App. 288 (1991).

**4.** *See, e.g., Scott (Charles) v. Brown,* 7 Vet.App. 184, 188–89, (1994); *Caffrey,* 6 Vet.App. at 382–84; *Frazer,* 6 Vet.App. at 19; *Waddell,* 5 Vet.App. at 455–56; *Quarles v. Derwinski,* 3 Vet.App. 129, 134–36 (1992).

intended to be "a document that would function akin to a notice of appeal." *Hamilton*, 39 F.3d at 1583. It seems too obvious to require further elaboration that only one NOA may be filed as to a particular appeal.

**2. Application of Bernard v. Brown:** The foregoing analysis and conclusions are fully consistent with the Court's holding in *Bernard v. Brown*, 4 Vet.App. 384 (1993), cited by the majority in support of its conclusion. *Ante* at 331. There, the Court held that "the question whether a claimant has submitted new and material evidence to reopen a claim and the question whether, upon such reopening, a claimant is entitled to VA benefits, are questions relating to a single 'matter' for purposes of the Board's jurisdiction under 38 U.S.C.[ ] § 7104(a)." *Id.* at 391. *Bernard* does not support the majority's position, because the reopening of a claim is not a "benefit" separate from the underlying claim, and a determination that there is new and material evidence to reopen the claim confers, in and of itself, no substantive benefit.[5] In contrast, in the instant case, the service-connection issue and the compensable-rating and effective-date issues each entail distinct substantive benefits. Although "claimants do not submit claims merely for the reopening of their previously and finally denied claims", *id.* at 392, claimants do indeed, as stressed in part I.E.1., above, submit claims with the sole aim of obtaining an earlier effective date or an increased rating.[6]

**3. Case does not involve a "remand" to the RO:** As the foregoing discussion illustrates, there are two very good reasons why, when the BVA reverses an RO decision by directing the award of service connection, it does not "remand" to the RO for consideration of a disability rating and effective date.

First, remand is a process that requires automatic return of the case to the BVA "for further appellate processing unless the appeal is withdrawn or [further] review ... results in the allowance of all benefits sought on appeal". 38 C.F.R. § 19.38 (1994). That is why when an issue is before the Board but has not yet been developed and adjudicated by an RO, the Board "refers" (rather than remands) to the RO for its initial determination. A remand would be invoked pursuant to 38 C.F.R. § 19.9 or § 19.38 only where the Board had established appellate jurisdiction over the issue in question. *See Bernard*, 4 Vet.App. at 393–94; VA Gen.Coun.Prec. 16–92 (July 24, 1992) (holding that "[g]enerally, the [Board], as an appellate body, is not authorized to make final determinations on issues which have not been considered by the [RO]"); *see also* 38 C.F.R. § 20.714(a)(2) (1994) (distinguishing between issues that are "remanded" to an RO for further development and issues which are not in appellate status that are "referred" to an RO for consideration). Second, the appellate process that was instituted by this appellant's NOD as to the RO's denial of service connection was terminated by the BVA's award of service connection. When, thereafter, the RO made an adjudication of rating and effective date, a new "initial ... determination" resulted, and section 7105(b) required a new NOD for the purpose of "initiating an appeal to the Board" and foreclosing finality at the RO. *Hamilton*, 39 F.3d at 1582; 38 U.S.C. § 7105(b). In other words, without a new NOD, the adjudication of these two issues would never be reviewed by the BVA. That situation contrasts with the one stressed by the Federal Circuit in its *Hamilton* opinion when, after the RO adjudicates a claim on "remand" from the Board, the case, which is

---

**5.** In *Bernard*, the underlying application for benefits involved a claim for disability compensation which had been denied by a prior final VA adjudication. Hence, the claim to reopen that prior final adjudication was required to be adjudicated under the two-step process set forth in *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it had to be determined whether the evidence presented or secured since the prior final disallowance of the claim was "new and material" under 38 U.S.C. § 5108. *Bernard v. Brown*, 4 Vet.App. 384, 389 (1993). If it was, the adjudicator then

would have to review the new evidence in the context of all the evidence in order to determine whether the prior disposition of the claim should be altered. *Ibid.; see* 38 U.S.C. §§ 7104(b), 7105(c), 5108; *Manio, supra; Suttmann v. Brown*, 5 Vet.App. 127, 135–36 (1993); *Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 215 (1991); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). The first step of *Manio/Bernard* is purely procedural.

**6.** *See supra* notes 3 and 4.

still pending on appeal to the Board, "is automatically returned to the Board for further processing if full relief is not awarded by the [RO] on remand." *Hamilton*, 39 F.3d at 1585.

The limitation of an NOD to the matter initially decided by an RO was specifically addressed in our *Hamilton* opinion in its holding that an issue remanded by the BVA for further development by the RO (where that issue was previously decided by the RO) continues in appellate status during that RO process and cannot support a new NOD after the RO readjudication on remand. *See Hamilton*, 4 Vet.App. at 538. That is not the situation in the case at hand, because neither the rating issue nor the effective-date issue was decided by the RO in the prior adjudication and the Board did not "remand" those issues to the RO. The Secretary is correct in asserting (Resp. at 4) that a claimant submitting a compensation and pension application, such as the appellant did here in February 1987 (Supplemental R. at 1), is generally applying for monetary payments and not merely a status, but, as the Secretary points out, "the *issue* of entitlement to service connection for a particular disability can be viewed as separate from that of entitlement to service-connected disability compensation". Resp. at 8. When an RO denies service connection, as it did here, it does not deal with the other two issues because they do not arise until service connection is awarded. *See id.* at 16. As noted in part I.E.1., above, only when an RO awards service connection does it go on to address those two other questions. When the Board grants service connection, it "returns" the claims file to the RO for it to determine an effective date and whether or not a compensable rating should be assigned. *See* Secretary's Resp. at 14–15; VA ADJUDICATION PROCEDURE MANUAL, M21–1 (Manual M–21), Part IV, para. 8.38(a), (b).

4. *NODs are claim-specific:* The above analysis fits well within this Court's conclusions in *Hamilton* that there can generally be "only one valid NOD as to a particular

claim"; that NODs are "claim-specific as to 'the benefit sought'" (*see* 38 U.S.C. § 7105(d)(1)) and must express disagreement with a certain "'issue or issues'" (*see* 38 U.S.C. § 7105(d)(1)(A); 38 C.F.R. §§ 20.201, 20.202 (1994)); and that a "claim" refers to "an application to be filed in making a claim for benefits" (*see* 38 U.S.C. §§ 5101(a), 5102)). *Hamilton*, 4 Vet.App. at 537. The Federal Circuit's opinion agreed that NODs "initiate[ ] appellate review of claim[s]" and that "[t]here can be only one *initial* determination in connection with a claim". *Hamilton*, 39 F.3d at 1586, 1584 (emphasis added).

As quoted in part I.D., above, this Court in *Hamilton*, in specifically adopting certain definitions of "claim" and "issue" (from a VA regulation and a proposed VA regulation), defined the term "claim" as an application for VA benefits with respect to a specific "issue", and defined the term "issue" as including "whether service connection should be granted for a particular disability", which was the particular benefit sought in the underlying appeal to the BVA in the instant case. *Hamilton*, 4 Vet.App. at 536.

As to the language in the adopted definition of "issue", that "the ultimate question to be decided in determining *whether or not a particular benefit sought on appeal will be granted* ... [,] includ[ing] all subsidiary questions which must be resolved in reaching that determination," *id.* at 536 (emphasis added), the award of service connection for a particular disability, even with a noncompensable rating, is itself a "benefit," entitling a veteran to certain VA benefits, such as health-care eligibility.[7] Further, VA regulations define "benefit" as "any payment, service, commodity, function, or *status,* entitlement to which is determined under laws administered by [VA] pertaining to veterans and their dependents and survivors." 38 C.F.R. § 20.3(e) (1994) (emphasis added).

Finally, the words of section 7105(b) themselves support the idea that the claim at issue initially is the one for service connection. The law requires the NOD to be filed as to "the result of *initial* review or determi-

---

7. *See* 38 U.S.C. § 1710(a)(1)(A), (E) (providing eligibility for VA health-care benefits to any veteran for a service-connected disability; to any

veteran with less than a 50%-rated service-connected disability, for any disability).

nation". 38 U.S.C. § 7105(b)(1) (emphasis added). The majority does not explain, because it cannot, how an RO decision that has not made any review or determination with respect to rating and effective date can later serve as "the initial ... determination ... with which disagreement is expressed" under section 7105(b)(1) with respect to those issues.

## II. Conclusion

Accordingly, we would hold that a claim for disability compensation by an otherwise eligible veteran includes three separate and distinct issues—service connection, compensable rating, and effective date—each of which may be capable under the law of supporting a separate NOD (since NODs are filed as to issues) and that a BVA decision, such as the one here, granting service connection and returning the claims file to the RO for it to determine compensability and an effective date is a final one terminating the appeal initiated by the NOD—here the January 1988, pre-VJRA NOD. The claimant, if dissatisfied after the RO adjudicates those issues, is required to file with the RO a separate NOD as to either or both of those issues in order to appeal either or both to the BVA. As to each one of these three issues,

unlike the question presented in *Bernard, supra,* a specific benefit may be sought by the appellant. Hence, here the appellant's January 1988 NOD pertained only to the RO's March 1987 denial of service connection for a left-eye disability—the first issue—and the September 1990 NOD pertained to the RO's July 1990 decision awarding the appellant no greater than a 10% rating for such disability and an effective date of no earlier than February 23, 1987—the remaining two issues. Without the subsequent NOD, filed in September 1990, those latter issues would not have been before the BVA for review.

In view of the foregoing, we would hold that under VJRA § 402 the September 1990 NOD provides this Court with jurisdiction over the appeal of the March 1992 BVA decision as to the compensability and effective-date issues. Accordingly, we respectfully dissent.